No. 128,032

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ANGEL CANTU,
*Appellant*.

SYLLABUS BY THE COURT

To convict a defendant of possession of methamphetamine under K.S.A. 21-5706(a), the State need only prove the defendant possessed methamphetamine. It is not required to also prove the methamphetamine was a substance having a potential for abuse associated with a stimulant effect on the central nervous system under K.S.A. 65-4107(d)(3).

Appeal from Lyon District Court; JEFFRY J. LARSON, judge. Submitted without oral argument. Opinion filed October 31, 2025. Affirmed.

*Merideth J. Hogan*, of Kansas Appellate Defender Office, for appellant.

*Carissa Brinker*, senior assistant county attorney, *Amy L. Aranda*, county attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before WARNER, C.J., MALONE and CLINE, JJ.

CLINE, J.: Angel Cantu appeals his convictions for unlawful possession of methamphetamine and drug paraphernalia. He claims the State did not prove all the elements of the possession charge and the prosecutor erred in closing when describing the

1

evidence. We find his arguments unavailing. The State was only required to prove the substance found in Cantu's pocket was methamphetamine—it did not need to prove that methamphetamine had any specific characteristics. And even assuming the prosecutor erred in closing arguments, we find the error harmless. We therefore affirm Cantu's convictions.

FACTUAL AND PROCEDURAL BACKGROUND

This case arises from a search incident to Cantu's arrest on an outstanding warrant. When officers searched Cantu, they removed all personal belongings from his pockets. Among other things, the officers found a small red metallic container that they thought was lip balm. When Officer Randall Crump handed the contents of Cantu's pocket to Officer Austin Nelson—which included the container—they heard rattling coming from the container. Officer Nelson then searched the container, believing it could contain illegal narcotics due to the rattling. Inside the container, Officer Nelson saw a single shard of what he believed to be methamphetamine. Later testing by the Kansas Bureau of Investigation confirmed Officer Nelson's suspicions.

Cantu denied the container was ever on his person or that he had ever seen it. Cantu told the officers he believed they had planted the container on him.

The State charged Cantu with unlawfully and feloniously possessing methamphetamine in violation of K.S.A. 21-5706(a) and (c)(1), and unlawful use or possession of drug paraphernalia in violation of K.S.A. 21-5709(b)(2) and (e)(3).

At trial, both officers testified about body camera footage that recorded the search. And the footage was played for the jury. Officer Crump believed the footage showed him pulling several items out of Cantu's pocket, including the container. But he said if you cannot see the container being pulled out of Cantu's pocket then "it's implied." Officer

2

Nelson testified that the footage showed Officer Crump passing the container to him but admitted it did not show Officer Crump removing items from Cantu's pocket.

In his defense, Cantu testified that he had never seen the container or its contents. He admitted the officer pulled multiple things out of his pocket that were his, such as lottery tickets, cigarettes, lighters, and bullets, but he denied the red metallic container was pulled out of his pocket. He also admitted the footage showed one officer handing to another officer the container along with the items Cantu admitted were in his pocket.

The jury ultimately found Cantu guilty on both charges. The district court sentenced him to prison but suspended that sentence and ordered Cantu to serve 12 months of probation. Cantu timely appealed.

REVIEW OF CANTU'S APPELLATE CHALLENGES

I. *Did the State have to prove that methamphetamine is a central nervous system stimulant that has potential for abuse?*

Cantu first argues the State did not prove all the elements of the crime of possession of methamphetamine under K.S.A. 21-5706(a). He interprets the relevant statutory language to require the State to prove the methamphetamine found in the container was a stimulant with potential for abuse. Because the State only presented evidence that the shard in the container was methamphetamine, he claims it failed to present sufficient evidence to convict him.

*Standard of Review*

In a criminal case:

> "When a defendant challenges the sufficiency of the evidence, we review the evidence in a light most favorable to the State to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. We do not reweigh the evidence, resolve conflicts in the evidence, or pass on the credibility of witnesses." *State v. Mendez*, 319 Kan. 718, 723, 559 P.3d 792 (2024).

To the extent we need to consider K.S.A. 65-4107(d), statutory interpretation presents a question of law over which appellate courts have unlimited review. *State v. Stoll*, 312 Kan. 726, 736, 480 P.3d 158 (2021).

*By proving that the substance in Cantu's possession was methamphetamine, the State proved all the qualities that methamphetamine has.*

While Cantu couches his argument as one based on sufficiency of the evidence, the first thing we must determine is what the State must prove to convict a defendant of possession of methamphetamine under K.S.A. 2023 Supp. 65-4107(d)(3), in violation of K.S.A. 21-5706(a).

K.S.A. 21-5706(a) criminalizes possession of, among other substances, any stimulant set forth in K.S.A. 2023 Supp. 65-4107(d)(3). Generally speaking, K.S.A. 2023 Supp. 65-4107 lists controlled substances from Schedule II of the Federal Drug Enforcement Administration's (DEA) controlled substances code, grouping the substances with similar characteristics. The stimulant Cantu was charged with possessing is defined in K.S.A. 2023 Supp. 65-4107(d)(3) as: "(d) Any material, compound, mixture, or preparation which contains any quantity of the following substances having a potential for abuse associated with a stimulant effect on the central nervous system: . . . (3) Methamphetamine, including its salts, isomers and salts of isomers . . . 1105."

4

Cantu parses out this statutory description, claiming the language and formulation of K.S.A. 2023 Supp. 65-4107(d)(3) signifies the Legislature intended to require the State to prove Cantu possessed methamphetamine *and* to prove that the methamphetamine he possessed was a substance that had a potential for abuse associated with a stimulant effect on the central nervous system.

Cantu acknowledges that our court has rejected this reading of the statute more than once. *State v. Caldwell*, No. 124,476, 2022 WL 17174569, at *8 (Kan. App. 2022) (unpublished opinion) (rejecting argument that the State was required to show substance had "a potential for abuse associated with a stimulant effect on the central nervous system"); *State v. Lynn*, No. 98,346, 2008 WL 4291520, at *6 (Kan. App. 2008) (unpublished opinion) (same). Even so, he believes that we should reach a different decision here. Despite *Caldwell* and *Lynn* holding otherwise, Cantu alleges that the Legislature must have wanted a different outcome when grouping the drugs by effects in subsection (d) as opposed to providing solely a drug compound list as done in K.S.A. 2023 Supp. 65-4107(c), (g), and (h). Cantu asserts that K.S.A. 2023 Supp. 65-4107(d) must be read first as a qualifier that the substance at issue has a potential for abuse associated with a stimulant effect on the central nervous system. And, once that is proven, then the State must prove the substance is on the list of drugs recognized in that subsection for a conviction.

The State, on the other hand, argues that the plain language of the statute—particularly with its punctuation—demonstrates that K.S.A. 2023 Supp. 65-4107(d) is meant to be a list of Schedule II substances which are all "'substances having a potential for abuse associated with a stimulant effect on the central nervous system.'" And it contends the Legislature's use of a colon in subsection (d) before listing the different substances indicates it was introducing "a word, clause, or phrase that explains, illustrates, amplifies, or restates what has gone before."

5

We have interpreted the statute in line with the State's position in the past. For example, in *Caldwell* we found the language in subsection (d) simply enumerates the characteristics of the controlled substances listed in that subsection. 2022 WL 17174569, at *9. And in *Lynn*, we held that "[t]he language in K.S.A. 65-4107(d) is a categorical heading and not an added element in the statute criminalizing the possession of the drug." 2008 WL 4291520, at *6. We pointed out that K.S.A. 65-4160 (now recodified as K.S.A. 21-5706) identifies two of the four drugs listed in K.S.A. 65-4107(d) and it specifically refers to the stimulants listed in subsections (d)(1) and (d)(3), making possession of these two types of stimulants unlawful. Since the only language incorporated by reference is the substance—methamphetamine—we found the generally descriptive language was not an added element the State must prove. 2008 WL 4291520, at *7. We still find this interpretation sensible.

We read the phrase "having a potential for abuse associated with a stimulant effect on the central nervous system" as a general description of the "following substances" listed in K.S.A. 2023 Supp. 65-4107. And the Legislature's inclusion of the DEA codes in the statute, which can then be used to find the DEA descriptions of the controlled substances, bears this out. Methamphetamine is coded as 1105 by the DEA. *Controlled Substances – Alphabetical Order*, DEA (October 2025), https://www.deadiversion.usdoj.gov/schedules/orangebook/c_cs_alpha.pdf. At the same website where it lists the codes for controlled substances, the DEA provides drug and chemical information sheets for every compound identified as an illicit drug. The methamphetamine information report identifies methamphetamine as "a highly addictive drug with potent central nervous system (CNS) stimulant properties." *Methamphetamine*, DEA (August 2025), https://www.deadiversion.usdoj.gov/drug_chem_info/meth.pdf. We presume the Legislature's inclusion of the DEA code incorporates by reference the addictive and stimulant effect of methamphetamine into the statutory definition of the substance set out in K.S.A. 2023 Supp. 65-4107(d)(3). Thus, by proving that the substance in Cantu's possession was methamphetamine, the State has already proven all

6

the qualities which methamphetamine is defined to have. And it would be redundant to require the State to prove qualities of methamphetamine that are already incorporated into the statute's definition of the substance. Therefore, we do not read the statute to require the State to prove the qualities of methamphetamine as a separate element of the offense.

The State needed only to prove that Cantu possessed methamphetamine. It was not required to prove any characteristics of that substance to convict him of possession of a stimulant designated in K.S.A. 2023 Supp. 65-4107(d)(3), in violation of K.S.A. 21-5706(a). We therefore affirm his conviction for possession of methamphetamine under K.S.A. 21-5706(a).

## II. *Did the prosecutor's statements during closing arguments prejudice Cantu's trial?*

Cantu next contends the prosecutor erred during closing arguments in saying that the body camera footage shows the red metallic container being removed from Cantu's pocket. He claims these statements misrepresented the evidence and prejudiced his defense because none of the footage shows Officer Crump's hand going into and out of Cantu's left pocket.

### *Standard of Review*

We normally use a two-step process to evaluate claims of prosecutorial error: determination of error and determination of prejudice. *Mendez*, 319 Kan. at 737. To determine whether prosecutorial error has occurred, the appellate court must decide whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial. 319 Kan. at 737. If error is found, we must determine whether the error prejudiced the defendant's due process rights to a fair trial. In evaluating prejudice, we simply adopt the traditional constitutional

7

harmlessness inquiry demanded by *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). Prosecutorial error is harmless if the State can demonstrate "'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.'" *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016).

A prosecutor errs by arguing a fact or factual inference with no evidentiary foundation. *State v. Moore*, 311 Kan. 1019, 1040, 469 P.3d 648 (2020). We will assume without deciding that the prosecutor's statements here were made in error, and proceed directly to evaluate whether the assumed error prejudiced Cantu's right to a fair trial.

*Even assuming the prosecutor's statements were made in error, the error did not prejudice Cantu.*

Cantu flags several statements by the prosecutor as being outside the wide latitude afforded to the prosecution, including:

- "[L]et's start with the red metallic container, whether the defendant possessed the red metallic container. Ladies and gentlemen, it was in his pocket. It was found in his pocket and pulled out of his pocket. *You can see that on video*."
- "*You can see from Officer Nelson's video and Officer Crump's video* that that red metallic container was pulled out of his pocket."
- "The defendant possessed methamphetamine and possessed the red metallic container. *All of it is seen on video*."

Even assuming these statements were made in error, as we do here, the State points out that the prosecutor acknowledged the gap in the body camera footage several

8

times. For example, soon after the prosecutor made the first two statements, she said "[she] would agree that there was a second that you can't see Officer Crump's hand because it doesn't go into the view of his body cam, but that's a very short period of time." The prosecutor also told the jury in her rebuttal closing, "The gap in the evidence is one second, maybe two or three, where you don't see Officer Crump's hand when he puts his hand in the defendant's pocket and pulls out multiple items that were in his possession." And she added later, "You don't see Officer Crump's hand go into [Cantu]'s pocket, but you can make a reasonable inference from the evidence that was presented from the videos you saw." We agree with the State that these comments mitigated any assumed error the prosecutor made in other comments during her closing arguments.

We also note the district court instructed the jury on the use of attorneys' statements during deliberations. Jury Instruction Number 4 provided that "[s]tatements, arguments, and remarks of counsel are intended to help you in understanding the evidence and in applying the law, but they are not evidence. If any statements are made that are not supported by the evidence, they should be disregarded." A jury is presumed to follow the instructions given to it. *State v. Reid*, 286 Kan. 494, 521, 186 P.3d 713 (2008). We assume the jury did so here, particularly since it asked to rewatch the body camera footage from both officers during deliberations. And the officers both testified that Officer Crump had removed the container with the methamphetamine from Cantu's pocket. The jury apparently credited this testimony and was unconvinced by Cantu's general denial.

Therefore, even assuming some of the prosecutor's statements were made in error, we find that error was harmless. The State has carried its burden to show that the jury reached its own conclusions on what the evidence showed and was not prejudiced by those statements.

Affirmed.

9